Pages 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
   VS.                         )          NO. CR 17-334 WHO
                               )
Christian Lopez,               )
                               )
            Defendant.         )
_____)

                          San Francisco, California
                          Monday, March 12, 2018

                     **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:          United States Attorney's Office
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                  BY:   **CHRISTOPHER VIEIRA, ESQ.**
                        **RANDALL LEONARD, ESQ.**


For Defendant:          Moell Law Office
                        214 Duboce Avenue
                        San Francisco, CA   94103
                  BY:   **SHAFFY MOEL, ESQ.**



Reported By:  Vicki Eastvold, RMR, CRR
              Official United States Reporter

<u>**Monday - March 12, 2018**</u>                              <u>**2:00 p.m.**</u>

<u>**P R O C E E D I N G S**</u>

---o0o---

THE CLERK:  And we're here for criminal matter 17-334,
USA versus Christian Lopez.  Counsel, please come forward and
state your appearance.

MR. VIEIRA:  Good afternoon, Your Honor.  Chris Vieira
and Randy Leonard on behalf of the United States.

MS. MOEL:  Good afternoon, Your Honor.  Shaffy Moel
for Christian Lopez who's before Your Honor in custody.

THE COURT:  All right.  So we have several motions and
a few other things to talk about.

So the first thing I'm going to hear is the severance
motion.  And here's what I think about this.

I don't think there's a problem with joinder under Rule 8.
I am concerned about prejudice under Rule 14.  And my
understanding is that Mr. Lopez is going to testify, if he can,
as to the entrapment defense; that he wouldn't be able to put
on that defense effectively without testifying, but does not
want to testify with respect to the threats and the witness
tampering.

And the prejudice -- so I see substantial prejudice there.
And I'm not sure I agree with the -- actually, I'm kind of sure
that I don't agree with the government's argument that those

1  statements would come in anyway.  So that's what I really want

2  to hear, Mr. Leonard, from you is why would it be admissible

3  for the witness to testify with respect to the tampering.

4         **MR. LEONARD:**  Well, I think, Your Honor, we have to

5  see how it would really play out in the case, right?  And

6  that's why I made the point in the motion that the argument

7  sounds one way when we sort of keep it in the theoretical, but

8  when we get down to the facts I think it plays out quite

9  differently.

10       And, in fact, the case that the defense cited for the

11  proposition you could testify to one and not the other rejected

12  that argument because by -- in that case, and I think it's the

13  same case here -- by testifying -- by attempting to testify,

14  I'll say -- on just a certain set of charges -- let's say on

15  the Counts 1 through 3, the drug distribution and conspiracy

16  charges -- that could potentially open the door to questions

17  about actions -- other bad acts.

18       One of those other bad acts, from the government's

19  perspective, is really a highly probative one, says the Ninth

20  Circuit, and that is an act of solicitation or intimidation of

21  a potential witness on those counts.  That's very -- that's

22  highly probative 404(b) evidence of consciousness of guilt.

23         **THE COURT:**  But it seems more likely to me that -- or,

24  certainly plausible to me -- that Mr. Lopez was angry for being

25  entrapped.  That's what his theory is.  So while I see what the

1   government's perspective is, and it could be -- you might be

2   right, but it's also -- if you were entrapped you'd also be

3   really angry.  It's still a crime.  It's still something you

4   can put on.  But it's just a different -- it just puts it in a

5   different place.

6       So then the question is, can he put on the defense that he

7   has for entrapment without being able to testify?

8       **MR. LEONARD:**  Well, then, Your Honor, I think that's

9   all the more reason why the counts should be joined.  Because

10  if his argument is that I was just angry for being entrapped,

11  well, then, he would have -- he in his own testimony would be

12  talking about those phone calls.  Or, those phone calls would

13  be highly probative for both the government's case and the

14  defense's case.  Because the defense would be saying, This is

15  proof that I was entrapped.  I was so frustrated that I was

16  entrapped.  And the government is saying, Well, no, on the

17  other hand, this is proof of your own consciousness of guilt.

18      And more than that, it's proof that you didn't have the

19  lack of predisposition.  Stated differently, you did have a

20  predisposition because here you are, after finding out you've

21  been quote/unquote entrapped, soliciting a beating for someone

22  who's -- for a witness who's going to participate in that case.

23      So, again, I think if we get down into the weeds of this

24  case we realize that no matter how you slice it this is

25  relevant and this is fair ground for cross-examination.

1       And I think Your Honor's example is a perfect example.   If

2   his argument is that, I have been entrapped, and I did this --

3   or, excuse me, this phone call is evidence that I've been

4   entrapped -- well, then, of course, it's fair game.   Because

5   he's presenting it --

6       **THE COURT:**   But he's not going to say that.   But it

7   seems logical to me that even though you've got a theory about

8   how it comes in, he's not going to be in a -- he does not --

9   first of all, he's going to -- he's not going to testify about

10  it because he doesn't want to admit that he said it in the

11  first place; which is a problem.   But he would be totally

12  blocked out of his ability to assert entrapment if he isn't

13  able to testify about the circumstances that happened before he

14  was indicted.   And that's really what the --

15      And you are entitled to put on -- if he puts on his

16  entrapment defense, you're entitled to put on prior acts and

17  those sorts of things.   But I don't think -- that's just my

18  concern.   And I didn't see a case that was helpful to you in

19  that regard.

20      **MR. LEONARD:**   I want to make sure I'm following you.

21  So is it the Court's position if he wanted to testify on

22  entrapment to just charges 1, 2 and 3, to the drug

23  distribution, he might have an argument that that should be

24  severed from Counts --

25      **THE COURT:**   From 4, 5 and 6.

1          **MR. LEONARD:**  Your Honor, respectfully, I think the

2   Court is -- I'm kind of seeing this whole discussion as making

3   our point.  Because if he does present that entrapment defense,

4   then in a severed trial in which Counts 4, 5 and 6 are not on

5   trial, that evidence would nonetheless be admissible because he

6   has now presented himself as someone who did not have the

7   predisposition to commit this crime.

8          So it's -- so the second -- I don't want to call them

9   prior acts because they happened after the fact.  We often talk

10  about 404(b), but it's actually other acts evidence.  So these

11  other acts of a witness intimidation would be relevant.  Let's

12  set aside -- let's set aside his entrapment defense.  Even if

13  he didn't have an entrapment defense I believe it's relevant.

14  I believe the Ninth Circuit countenance is this approach that

15  other -- excuse me -- the phone call is evidence of

16  consciousness of guilt.

17         And I want to find the case so I can have it here.  It is

18  *Meling*.  *United States versus Meling*.

19          **THE COURT:**  Yeah.  I read *Meling* this morning.

20          **MR. LEONARD:**  So even if he didn't raise the

21  entrapment defense, we would say this is very probative

22  relevant evidence of his consciousness of guilt.

23          **THE COURT:**  But that's exactly my problem with it.

24  I'm not sure that it is evidence of consciousness of guilt.  It

25  may be consciousness of anger that he got entrapped.  So that's

1  -- it's not that he's disputing the fact that he was there and

2  that he did the drug deal.  I think his whole defense is going

3  to be, I did it, but I got tricked into it by the CI.

4       And so that's not consciousness of guilt.  So then the

5  threat isn't consciousness of guilt, it's just anger.

6            **MR. LEONARD:**  Well, I think that's one reading of it,

7  Your Honor.

8            **THE COURT:**  Right.  And yours is another.  But that's

9  why I think it's safer to allow the severance and allow the

10  entrapment defense to go forward.

11           **MR. LEONARD:**  Well, here's the problem with doing

12  that, Your Honor.  I think it really frustrates the objective

13  of Rule 8 for judicial economy.  Because I think the Court

14  would certainly agree with this proposition, and that is --

15           **THE COURT:**  I definitely agree with that it's not -- I

16  would prefer not to try this case twice.  I totally get that.

17  And I do think it's proper -- I don't think -- I think the

18  joinder itself was proper.  It's just the circumstance is

19  prejudicial under Rule 14.

20       Let me bring -- since I've been carrying the ball for

21  Ms. Moeel today, let me have her correct any misstatements that

22  I've made.

23           Hello, TK.  How are you?

24           **THE OFFICER:**  Good, Judge.  How are you?

25           **THE COURT:**  Good to see you.

1   So correct any misunderstandings that I have and lay out

2   what you think.

3       **MS. MOEL:**   Well, Your Honor, I appreciate your Rule

4   14 analysis and I agree with it and I'll tell you why.

5       I do think -- and I won't beat a dead horse since I'm sort

6   of winning, but I do believe that the Rule 8 joinder is still

7   problematic for the reasons I've identified.   But particularly

8   for the reasons identified in the *Jawara* case.   I mean, *Jawara*

9   went the other way.   They found that Rule 8 was properly --

10  that the counts were properly joined, but there wasn't

11  prejudice.

12      Here -- and again, we have to look at just the allegations

13  in the indictment under the Ninth Circuit precedent.   And what

14  the government's done in their response in arguing that Rule 8

15  joinder is proper is they've argued a lot of the underlying

16  facts.

17      But in the same way that in *Jowara* we don't have the same

18  statute set -- I'm talking about the drug charges kind of

19  contrasting with the tampering and solicitation charges.   Not

20  the same statute, not the same elements.   Not the same victims.

21  Not the same temporal proximity, neither the same location.

22      So all the factors identified looking at them on the face

23  of the indictment, the witness identified for the tampering is

24  not alleged in the drug charges.   All those factors go toward

25  there not being proper joinder looking at just the face of the

1    indictment in the first place.

2         But we do use Rule 14 as a sort of secondary analysis, not

3    just a backup, but its own individual inquiry.  And I agree

4    with the Court that under Rule 14 there is significant

5    prejudice for all the reasons cited by the Court.

6         Now, with respect to the predisposition, and I think this

7    case is going to come down with significant argument and future

8    litigation regarding what predisposition evidence comes in, but

9    I think the government is incorrect that there is any probative

10   value as to predisposition for the later charges that happened

11   after the drug crimes were committed and the entrapment defense

12   is available.

13        Predisposition arguments and the evidence that is allowed

14   to be introduced ends when the crime charged, and when

15   Mr. Lopez was potentially entrapped ends.  Which is, when the

16   drug crimes are completed, anything that happened before that

17   the government is potentially able to bring in as

18   predisposition.  Not what happened in the future.  Not what

19   Mr. Lopez does in the jail, for example.  Not what kinds of

20   things he might say in a jail phone call when he's in custody

21   for this offense.

22        So there's not -- you know, not the day before trial.

23   None of those would come in because they happened after the

24   drug charges.

25        So to the extent the government would want to bring the

1 tampering and solicitation charges in to prove predisposition,

2 that's just not available to them.

3     Number two, as Your Honor pointed out, consciousness of

4 guilt is not an issue here because Mr. Lopez is admitting to

5 the basic elements of the crime.  He's admitting that he did

6 the thing; and there's a legal justification for it in the form

7 of entrapment.  So consciousness of guilt to the extent they're

8 relying on that is not available here, nor is any other basis

9 for 404(b), intent, motive, plan, opportunity.  All of those

10 things, again, we are looking at when the drug crimes happened.

11     That Mr. Lopez at the time of the drug crimes had some

12 premonition, or that the government had a crystal ball to know

13 what he would have done in the future, nothing that happened

14 after that can explain any intent, motive, opportunity for the

15 drug crimes.

16     So, again, it doesn't make sense that that drug crime --

17 the tampering or solicitation charges would come in under that

18 theory, either.

19     And, Your Honor is right; fundamentally, this is a

20 constitutional problem.  The exact type that Rule 14 is meant

21 to protect somebody like Mr. Lopez from.  He must testify, in

22 my view, and I think that's borne out by the case law, to show

23 that the government did not entrap him.  He has to present some

24 evidence of why to get the instruction in the first place.

25     And that defense is plainly not available to him, and we

1    haven't given notice of that with respect to the tampering and

2    solicitation charges.

3         So he either can testify to get his entrapment of the drug

4    charges, or choose not to self-incriminate in honor of his

5    Fifth Amendment privileges to the other charges.  And so he's

6    in this bind.  He cannot do both.  He cannot have both the

7    Fifth and Sixth Amendment right to present a fair defense and

8    protect his ability under the Fifth Amendment to not

9    self-incriminate.  And that's why I do agree that Rule 14 does

10   support a severance of these charges.

11        **THE COURT:**  I am going to sever, Mr. Leonard.  And so

12   we'll do the first three counts.

13        So then the next question, I think, is --

14        Did you want to say something?

15        **MR. LEONARD:**  Oh, no.  Please.

16        **THE COURT:**  The next question is how do we do this in

17   the most efficient way possible?  Because I like to do things

18   efficiently, Mr. Lopez, but protect your rights.  And so I've

19   got to protect your rights first, but then I want to be

20   efficient.  And the evidence that the government's going to put

21   on now they would have to put it on twice, basically, which I

22   totally understand and I'm not very happy about.  But that's --

23   it's a short trial so it's not going to -- it will just be more

24   trial practice.

25        **MR. LEONARD:**  In that respect, Your Honor, we would

1  like some clarity on the admissibility of what's now 404(b)

2  stuff.  And if I could just respond briefly to the 404(b)

3  argument Ms. Moeel made.

4      We still have to prove our case.  And 404(b) evidence is

5  evidence.  It's admissible evidence.  And we have to prove

6  every element to every juror.  So just because he might be

7  conceding certain facts or certain arguments, we still have to

8  prove the case.  And 404(b) evidence is admissible to do that.

9      **THE COURT:**  We'll go through all the motions *in limine*

10  and we can talk through these things.  And if there's any issue

11  -- we'll solve the issues by the time we leave here.

12      **MR. LEONARD:**  Yes, sir.

13      **THE COURT:**  So one thought that I had had, but I'm not

14  sure that it works, at the end of the day.  One thought that I

15  had was we use the same jury.  That we try the first three

16  counts.  And they decide what they -- and Mr. Lopez testifies.

17  Doesn't say anything about the threats.

18      And then that jury has already heard the evidence and then

19  comes back and does the second thing.  Not sure that that

20  works.  And I would only do that if the defense was in full

21  accord with doing it.  I can see some reasons why that may not

22  be a good idea.

23      Looks like you're shaking your head.

24      **MS. MOEEL:**  Yeah, Your Honor.  Again, I respect

25  judicial economy as much as the next person as a member of this

1   bar, but I do, off the top of my head, see some problems with

2   that.  So I would not be willing to concede to that for

3   Mr. Lopez.

4       **THE COURT:**  So the second thing that I was thinking

5   about, and it depends on how many people we call as jurors, is

6   maybe we do this -- maybe we pick two juries on the 2nd.  And

7   we do -- we have the -- impanel the first one, and then have

8   the second trial go the following Monday.  And if we don't do

9   it that way, we'll pick another jury the following Monday.  But

10  we're going to do this as close together as we can to

11  inconvenience witnesses the least and so on.

12      **MS. MOEEL:**  Sure.  Your Honor, our request would be

13  just to pick the jury the following Monday.

14      **THE COURT:**  I'm not sure how many people we have

15  called.  Is there a reason why you're --

16      **MS. MOEEL:**  Well, I'm just thinking through the

17  mechanics of it.  So when we have an attorney-led *voir dire*, we

18  would be talking potentially about issues that could reveal the

19  bias of the witnesses as to the particular sort of themes in

20  the case (sic).  That might again reveal to one jury or the

21  other some of the evidence that has been excluded.

22      **THE COURT:**  That's probably right.

23      **MR. LEONARD:**  I think we agree with Ms. Moeel on that

24  point.

25      **THE COURT:**  Okay.

1          **MR. LEONARD:**  If it's going to be a very robust

2    helpful *voir dire*, we'd like to get into some of the facts of

3    the case.

4          **THE COURT:**  Yes.  Absolutely.  All right.  So all my

5    bright ideas are for naught.  That's fine.

6       So let's go onto the motions *in limine*.

7       So starting with the government's.  I didn't see a

8    response by the defense.

9          **MS. MOEEL:**  Your Honor, I'm so sorry.  I did not file

10   a response, and I apologize for that.  I was -- we had -- sort

11   of had a shortened time frame based on the timing of the

12   indictment that came down, and I focused on filing the motions

13   to bifurcate and so I did not get around to filing the

14   opposition.  And I really apologize.

15         **THE COURT:**  I'm going to run through my reaction to

16   each of them and then I'll let you respond.

17      Number one, the impeachment of the confidential informant

18   being confined to the Rules of Evidence.  I agree with that.  I

19   don't know there's much more to be said with respect to that.

20   And I think particularly in that regard the government is

21   concerned about cross-examination on specific instances of past

22   conduct; and I agree with the government.

23      Second, the protection of the informants by not mentioning

24   his name in public filings and prohibiting the use of

25   electronic devices while he testifies is fine.

1    Third, no reference should be made by the defense to

2  punishment or immigration consequences.

3    The opening -- number four, the opening should conform to

4  the evidence that's expected to be admitted.

5    Five, the defense has reciprocal obligations.

6    Six, the defense shouldn't create surprise defenses.

7    Seven -- I think this already happened -- which was the

8  pre-trial offer of proof for affirmative defenses, which is

9  entrapment.

10    Eight, give an entrapment instruction only when there's

11  sufficient evidence.

12    That's -- all of these things are sort of general rules,

13  which are fine.  Or, are fine and appropriate.

14    With respect to eight, there's -- if entrapment is going

15  to be -- if Mr. Lopez is going to testify, he will undoubtedly

16  open the door to character evidence and bad acts evidence.  And

17  we'll talk about the gang evidence in a moment and maybe you'll

18  enlighten me on some of that.

19    So with number nine was the bad acts.  And one thing --

20  two things were mentioned by the government.  One is past drug

21  sales, which would seem germane.  The other one is membership

22  in the gang that sells drugs.  And I want to talk about what

23  that evidence might look like in just a moment.

24    Ten, was to exclude witnesses except the case agent, which

25  is fine.

 1          And then eleven, that the defendant's out-of-court

 2    statements would be admissible.  Which is true.  And then the

 3    defendant couldn't cherry pick other pieces of those things

 4    without his -- unless it was appropriate through his testimony.

 5          So those were my reactions.

 6          Did you have -- is there any one that you wanted to speak

 7    to, Ms. Moeel?

 8            MS. MOEEL:  I did want to speak, please, to the

 9    opening the door with respect to the entrapment instruction --

10            THE COURT:  Okay.

11            MS. MOEEL:  -- and the parameters of that.  Your

12    Honor, it's my -- I think -- so what I've received is a 404(b)

13    notice letter.  That's what it's called.  Which lists out in

14    bullet point form the things that the government believes it

15    can introduce if Mr. Lopez opens the door by -- essentially by

16    testifying, presenting the entrapment defense.

17          And I think that -- well, and with respect to that, the

18    404(b) notice does not actually indicate what 404(b) grounds

19    those particular pieces of evidence go to show.  So for

20    example, there is no -- the government has not offered any

21    information by way of whether a particular misdemeanor

22    possession for possessing fireworks, for example, whether that

23    goes to intent, plan, opportunity or motive to commit the drug

24    distribution charges.

25          So I don't believe the law regarding predisposition on

 1   entrapment is everything under the sun suddenly becomes

 2   admissible if a defendant argues that he has been induced

 3   unfairly to commit the crime.

 4        What I believe the state of the law is is that what goes

 5   -- what evidence shows that he's predisposed to commit the

 6   charged offenses?  So whether a possession of the fireworks,

 7   for example, goes to show he's predisposed to committing the

 8   drug charges.  So I don't believe that that's the case.

 9        And then there are some other sort of bullet proof --

10   bullet pointed -- distinct offers of 404(b) that I think are

11   also problematic.  And I don't know whether to go through them

12   here at this time or -- I don't know.  I guess we can go back

13   and forth.

14        But that's sort of my issue.

15        With respect to the two identified here and that I did

16   discuss at least in my motions *in limine* with regard to gang

17   membership and drug sales, I would like to talk about that.

18        The government has also indicated in an expert letter, or

19   an expert witness notice that I received regarding the chemist,

20   one sentence regarding if the defendant offers entrapment as a

21   defense then we will call a particular officer from the South

22   San Francisco Police Department to discuss -- and I think it

23   was literally just this:  Mr. Lopez's membership in the Cypress

24   Park Locos gang.  And two, the officer's familiarity with that

25   gang and his familiarity that the gang sells drugs.

1       So I think the government's theory here is clear; and I

2    think that is not appropriate either as expert notice, for one,

3    because I've indicated that Mr. Lopez is going to testify, he's

4    presenting this entrapment defense.  I've told them for months.

5    So, one, I don't have anything with regard to how this expert

6    is an expert, and so I can't sort of -- I can't oppose that

7    with some specificity.

8       But the membership in the gang, again, is hard to argue

9    against without more specificity, but I think that -- I just

10   still have no discovery on it.  I don't know what it means for

11   a person to be a member of this gang.  I don't know if they

12   have a document, Mr. Lopez's statement saying he's a member of

13   the gang, or if they're just going to have an officer's opinion

14   that Mr. Lopez is a member of the gang based on where he lives.

15      So for one thing, it's hard for me to argue against it

16   because I don't know what the discovery, what the evidence,

17   actually would be.  But if it's simply that, that an officer is

18   going to testify that he believes Mr. Lopez is in a gang and

19   he's just going to offer his opinion about what that gang does

20   and that that gang sells drugs and that, therefore, Mr. Lopez

21   has a predisposition to sell drugs when he's never been

22   arrested for selling drugs, never been convicted for selling

23   drugs; I find that to be extremely problematic.  Not probative

24   at all.  Because it's not specific to Mr. Lopez.  And highly,

25   highly prejudicial.  So I would have a problem with those

1    things coming in.

2              **THE COURT:**  Mr. Vieira.

3              **MR. VIEIRA:**  Thank you, Your Honor.  So I just want to

4    address kind the notice issues first.

5         At this point, the government is not intending on calling

6    Officer Fukushima during its case in chief.  And the Federal

7    Rules of Evidence -- or, criminal procedure, I'm sorry -- would

8    only require an expert disclosure for an expert that the

9    government in intending on calling in its case in chief.  Out

10   of an abundance of caution, and to see exactly how Mr. Lopez

11   might open the door to such testimony during his anticipated

12   testimony, our current plan is to wait to put that expert on

13   during our rebuttal case.

14        As far as information that that officer can provide, he --

15   there is a document in discovery that I will produce to defense

16   today.  Basically, a writeup from that officer who opines based

17   on a variety of criteria -- the individual Mr. Lopez has been

18   arrested with; has been seen hanging out with; photos including

19   gang indicia, et cetera, I won't get too much into the

20   details -- that Mr. Lopez is a member of the Cypress Park Locos

21   gang.  And, in fact, the co-defendant in this case, Cristian

22   Rubio, is also a validated member of that gang, as well.

23        And then as far as additional testimony we would expect

24   the officer to testify that one of the gang's primary

25   activities, ways of making money, et cetera, reasons for

1    controlling territory and defending territory, is to sell drugs

2    within that territory and that members of the gang would be

3    expected to at least participate in activities that further the

4    gang's objectives, including selling drugs.

5        But that is not something that we intend at this point on

6    offering during the case in chief just simply because I think

7    it is -- I think, as defense counsel has recognized, it is we

8    believe highly probative evidence in this case, but at the same

9    time it's also difficult evidence to be brought against a

10   defendant.  There's weights on both sides.

11       So we're, in abundance of caution, currently planning on

12   holding off and seeing kind of exactly how wide the door has

13   been opened to that type of evidence.  Because we would agree

14   that evidence is not admissible absent the door being opened.

15           THE COURT:  Well, right.  You know that the door's

16   going to be open somewhat.

17           MR. VIEIRA:  In some way.

18           THE COURT:  So I would encourage you to take a look,

19   if you haven't, at the order that I made in the *Williams* case

20   back in about 2016 or 2015 on gang evidence.  There's a gang

21   expert who was going to testify who was a member of the gang

22   task force who knew a lot about Western Addition gangs and was

23   a good and credible witness, but he had not had any other -- he

24   did not have other expertise with respect to gangs.

25       He didn't have expertise beyond the gangs in the Western

1   Addition.  He didn't have special education, training, other

2   sort of expertise.  And I pretty severely limited what he was

3   able to testify to.  He could testify about -- this is from

4   memory and from what he ended up testifying to -- but he could

5   testify to slang; he could testify to, I think, tattoos; and I

6   think the geographic location of gangs in the Western Addition.

7   But he could not then go further to say:  And I know this guy

8   is in a gang.  I know what this gang does.  That had to be

9   proven by the actual evidence of what they did.

10       You can't put on an expert to say -- to prove the crime,

11  basically.  And that's -- other judges in our district have, I

12  think, done the same thing.  Judge Illston did the same thing

13  and Judge Alsup did the same thing.

14       So I would look carefully at that as you're thinking about

15  what's going to be germane and not.

16           MR. VIEIRA:  And we can do that, Your Honor,

17  certainly.  I believe this witness also -- I vaguely, vaguely

18  recall the order that the Court is referencing.  And I'm not

19  sure what the witness's qualifications were in that case, but I

20  can say in this one, this witness does have at least some

21  degree of personal knowledge regarding the defendant and --

22  this defendant specifically -- and the gang.  I'm not sure if

23  the witness in the *Williams* case had that as well, but we can

24  take a look at that order.

25           THE COURT:  Take a look.  What I would hate to have to

1  do is to stop the trial in the middle.  So if there is -- so I

2  would think -- think through what you are likely to want to put

3  on in light of the expected testimony and then disclose it to

4  the defense.  And if we need to have some sort of a pre-trial

5  *Daubert* on this a couple days ahead of time, or at least some

6  listing of the expected opinions --

7       And maybe that's the -- that's what I'm going to ask you

8  to do.

9       Why don't you make a list of the opinions that you would

10 expect the witness to give and the witness's background.  And

11 what if you did that by the 26th of March?

12        **MR. VIEIRA:**  That's fine.

13        **THE COURT:**  And then if there's a concern about that

14 testimony why don't you file a notice on the 28th.

15        **MS. MOEEL:**  Sure.

16        **THE COURT:**  And then I'll decide what to do.  And

17 maybe when I get off the bench and I'm thinking totally clearly

18 we might have some sort of a hearing on the 29th if there's the

19 need to do that.  Or we may be able to just do it in an

20 afternoon on the 3rd, more likely.  Okay?

21        **MS. MOEEL:**  Yes.  And, Your Honor, I guess this goes

22 without saying, but you're not making necessarily any finding

23 or ruling on the probative value of the testimony or the

24 admissibility as an initial point, are you?  I mean, I think --

25        **THE COURT:**  Well, if there was a solid link between

```
 1   Mr. Lopez's past conduct -- I don't know what, Mr. Lopez, your
 2   past is so I'm just making things up right now.
 3       But if there was a bunch of evidence of Mr. Lopez selling
 4   small amounts of narcotics, but he'd never been arrested for
 5   it.  Or, he'd been arrested, but they'd been tossed.  But there
 6   was some sort of significant history; and that he was a member
 7   of a gang that does a lot of drug selling; and he was connected
 8   with several other people in the gang who were involved in
 9   that.  The more evidence of that sort that there is that comes
10   in legitimately, the more admissible it's going to be.
11           MS. MOEEL:  Okay.
12           THE COURT:  And if there's -- if it's just scattered
13   information of different sorts then I wouldn't be inclined to
14   do it.
15           MS. MOEEL:  Okay.  Great.  And I guess I will make
16   this a more formal written request, but if it's true that this
17   officer has had significant personal contact with Mr. Lopez,
18   then we would be requesting any of Mr. Lopez's statements that
19   he may have made to that officer that form the basis of his
20   opinions.  Because we don't have anything like that right now.
21           THE COURT:  All right.
22           MR. VIEIRA:  If there are statements -- or, if
23   anything's written or anything like that, we can provide them.
24   I'm not sure that they're, given the nature of the police work
25   and contact, I don't know that there's anything as formal as a
```

```
 1    report.
 2          THE COURT:  It does seem to me -- you know the case
 3    better than I do -- but it looks like this whole case is going
 4    to come down to entrapment.  That everything -- I'd be
 5    surprised if you're not going to stipulate, Ms. Moeel, to the
 6    purity and those sorts of things.  Maybe you aren't.  But it
 7    seems to me that it's just coming down to that issue.
 8          So you know what evidence you're going to need in
 9    rebuttal, and so disclose it.  And if it's all resting on the
10    officer, then fine.  But if there are statements, we ought to
11    get them out so that there aren't any surprises.
12          Okay.  Anything else on that?  On the government's motions
13    in limine?
14          MS. MOEEL:  No, Your Honor.
15          THE COURT:  So on the defense motions in limine -- so
16    what about the -- I just made an offhand comment about weight
17    and purity.  The stipulations that the government mentioned in
18    their brief and motion that you've been concerned about
19    agreeing to because, I guess in part, what was going to happen
20    with the severance, what's your perspective on those now?
21          MS. MOEEL:  Your Honor, I was -- it's hard because I
22    was sort of raised in a different district that had different
23    customs.  I'm from the Southern District of California where I
24    was a federal public defender.  So my belief is that where the
25    government is not giving Mr. Lopez any benefit to stipulate to
```

1   any particular aspect of the trial or an element of the offense

2   that they have to prove to a jury beyond a reasonable doubt,

3   that Mr. Lopez will not stipulate.

4         **THE COURT:** Well, I can't force you to.

5     All right. So that tells you where you need to be with

6   your witnesses.

7     We've talked about the gang. Testimony. With respect to

8   documents that haven't -- exhibits that haven't been produced,

9   I set a date of March 23. If there's anything else that the

10  government expects to use or with respect to the affirmative

11  defense, they ought to be produced to each other by the 23rd.

12        **MR. VIEIRA:** And for clarification, Your Honor. On

13  that, would that be exhibits that the government intends to

14  admit? Because we are currently preparing transcripts for

15  audio discovery, but those transcripts will not ultimately be

16  admitted because they're English language.

17        **THE COURT:** Fair enough. And obviously, as soon as

18  you're able to get those to the defense, that's fine. But, no,

19  I'm talking about something that is new; and absent good cause

20  I'm not going to allow it unless it's been exchanged by the

21  23rd.

22        **MR. VIEIRA:** And specifically -- well, I guess those

23  transcripts may not be prepared by the 23rd, but --

24        **THE COURT:** And I'm excluding the transcripts because

25  the recordings the defense already has.

1          **MR. VIEIRA:**  So just exhibits that the government

2    would seek to admit into evidence need to be produced by the

3    23rd.  And conversely, exhibits the defense, I guess, would

4    want to.

5          **THE COURT:**  For the affirmative defense.

6          **MR. VIEIRA:**  For the affirmative defense.  All right.

7    Thank you.

8          **MS. MOEEL:**  Entrapment is not an affirmative defense.

9    So you mean just basically in our case.

10         **THE COURT:**  In your case.  In your case.

11         **MS. MOEEL:**  Okay.

12         **THE COURT:**  Thank you.  There was -- number 3 we've

13   talked about, which was other acts, which can come in.

14         **MS. MOEEL:**  Your Honor, I guess, if we may, there are

15   other "other acts" evidence that the government has noticed in

16   its letter in bullet point format.

17       So, for example, with respect to Mr. Lopez's misdemeanor

18   priors for possessing an illegal -- fireworks, and a

19   misdemeanor offense for carrying a concealed weapon.  So -- and

20   again, they've indicated that that's something they would only

21   use in rebuttal evidence.  Or, not in their case in chief, I

22   suppose, is more what they've said.

23       So is this something -- is this something better for me to

24   just kind of very specifically --

25         **THE COURT:**  Helpful for me to see the document, for

1    you to identify what the problem is or what the concern is.

2    And talk about it with Mr. Vieira.

3         **MS. MOEL:**  All right.  I got the notice --

4         **THE COURT:**  Then bring me what the problem is and I'll

5    deal with the problem.

6         **MS. MOEL:**  We'll do that.  I'll do that.

7         **THE COURT:**  Okay.  So there wasn't an opposition to

8    number is 5, 6, 8, 10, 11, and 12.  So I'll grant that.

9         With respect to the admissibility of statements on the

10   audio recording; if there's a problem with that -- and I guess

11   this all depends on when the transcripts are prepared -- but

12   I'd like to see those in advance so I don't have to deal with

13   them on the fly.  So if the -- it depends when the transcripts

14   are prepared.  But hopefully if they're prepared by March --

15   I'd love to see them by March 26, annotated with whatever the

16   defense's objections are to them.  If that's not possible, then

17   I'd like to see them as soon as I'm able to see them.

18        **MR. VIEIRA:**  And, Your Honor, I don't think the

19   government would be admitting anything in the phone records for

20   the truth of the matter asserted other than, you know, the fact

21   that it was asserted, for instance.  I can get you X amount of

22   drugs by X date, kind of thing.  Don't really care if that's

23   true or not necessarily, but the fact the offer was being made,

24   for instance, would be kind of appropriate.

25        **THE COURT:**  So in a conversation with Mr. Lopez.  And

1    so I'm inclined, in those circumstances, to allow them either

2    as not hearsay -- as not hearsay for any number of reasons,

3    including context, as long as there are statements by the

4    defendant in there.

5              MS. MOEEL:  There are other statements that I think

6    are -- that should be also subject to 403 grounds.  And the

7    government has indicated some of the statements that Mr. Lopez

8    has made.  Even though on the one hand they're saying they're

9    not asserting it for the truth, on the other hand they seem to

10   be arguing with me or in prior correspondence that it does go

11   to predisposition.  So I think that -- I think it is best to

12   address them specifically once the transcript --

13             THE COURT:  Just identify them for me and I'll take a

14   look at them.

15             MS. MOEEL:  Sure.

16             THE COURT:  The government's case agent can be present

17   throughout the case.  And I think that takes care of all the

18   motions *in limine* that the government -- or, that the defense

19   filed.

20             MS. MOEEL:  And then number 12, Your Honor, with

21   respect to government witnesses also being subject to defense

22   subpoena unless released.

23             THE COURT:  I think the government agrees.

24             MS. MOEEL:  No opposition?  Okay.  Great.

25             THE COURT:  All right.  So that's -- those are the

1  motions *in limine*.

2      So now, Mr. Leonard, are you satisfied at the moment with

3  what you can do and not do with respect to the 403, 404 issues

4  that we were talking about in the beginning?

5          **MR. LEONARD:**  Not entirely, Your Honor.  Because I was

6  just thinking through your order again on severance for this

7  purpose.  And it seemed as though the Court was saying that in

8  testifying on the severed Counts 1, 2 and 3, the defendant may

9  testify that his statements to an undercover police officer

10  after the fact were proof of his being entrapped.

11          **THE COURT:**  So ignore what I said.  Because if he --

12  if he testifies about what he said to the undercover after the

13  fact, it's fair game for you to do whatever you want to do.

14  He's not going to -- I don't think he's going to do that.

15      What I was --

16          **MR. LEONARD:**  I see.

17          **THE COURT:**  -- talking about was, just in my mind as I

18  was reading it, I was trying to put myself into what Mr. Lopez

19  might say about that if he was going to say anything at all.

20  Which he doesn't have to.

21          **MR. LEONARD:**  Well, I guess that's where -- that's

22  where I want some guidance.  Because it's our position that if

23  he says anything -- if he testifies about anything on Counts 1,

24  2 and 3, his conversation with the undercover officer after his

25  arrest is relevant and admissible.

1      **THE COURT:**  I understand that that's your view.  It's

2  not mine.  I'm really going to draw a line from the time that

3  he was indicted -- the prior acts from the time that he's taken

4  into custody for 1, 2 and 3.  Or actually -- yeah.  And brought

5  before the indictment.  That will be the line that I draw.

6      **MR. LEONARD:**  And that is if -- if the door is not

7  opened.

8      **THE COURT:**  Unless the door is opened further by

9  Mr. Lopez.

10      **MR. LEONARD:**  But that would require something more

11  specific on his part than just testifying on 1, 2 and 3.

12      **THE COURT:**  Exactly right.  Exactly right.

13      **MS. MOEEL:**  And, Your Honor, because here he was

14  indicted June 2017, the first indictment, but he wasn't

15  arrested until some months later, I guess my view would be that

16  the timeline isn't actually up until he was arrested, but

17  really up until the indictment comes down.  Or, really, up

18  until -- the dates of the offense, mostly.  Because entrapment

19  -- I mean, there wouldn't be anything probative for him to talk

20  about after the crime has already happened.

21      **THE COURT:**  Well, that I don't know about.  And if

22  he's out and about doing stuff after the act, it would seem to

23  me that would be fair game.

24      What I think would not be fair game is the conversation

25  with the undercover.

1          **MS. MOEEL:**  Right.  Okay.  There's no allegation that

2  he was --

3          **THE COURT:**  I would stop there while you're ahead on

4  that point.

5          **MS. MOEEL:**  Okay.  Got it.

6          **MR. VIEIRA:**  And I would just say for the record, Your

7  Honor, there were conversations that Mr. Lopez had with an

8  undercover officer in the days following the October 2016

9  methamphetamine sale where he solicited the officer, basically

10  asked him if he wanted to buy more.  And the government would

11  be seeking to introduce that directly on the point of

12  entrapment.

13          **THE COURT:**  I agree.  I agree.

14    With that, let's talk about a couple of trial mechanic

15  things so we're all clear on that.

16    The trial days will be from 8 to 1 except for on the day

17  that we pick the jury.  And that day I think we should just go

18  all the day.  The jurors will be here, they won't know what to

19  expect as far as timing's concerned.  We might as well use a

20  full day and get some -- make some progress on the trial.  So

21  that would be my anticipation.

22    And then I think it's -- and I may tell them that they

23  should plan on Friday, at least, to be available for the full

24  day.  Because either they'll be in a place to be deliberating

25  or we could make use of the full day.  I don't have any

1   calendars on Friday, so --

2       So that would be my thought about that.

3       The *voir dire* you've agreed on.  And that's fine.  I'll

4   give it -- I'll give you each about 15 minutes to go further on

5   things.  If you're really making headway, I'll let you go a

6   little longer than that.  But usually people aren't.  So 15

7   minutes seems like plenty.

8       I didn't see a joint statement that describes the case.

9   If you want to get together for something for me to read to the

10  jury, that would be great.  And if you have, all you have to do

11  is point it out to me.

12      **MR. LEONARD:**  Your Honor, we talked about it, and I

13  think both the government and defense -- please tell me if

14  you've changed your position -- are content with instruction

15  number 2 which is, basically, just a reading of the charges

16  serving as a preliminary statement, if that's okay with the

17  Court.

18          **MS. MOEEL:**  Yes, Your Honor.  That's fine.

19          **THE COURT:**  Okay.  That's what we'll do.

20      **MR. LEONARD:**  May I ask another mechanical question

21  about *voir dire*, Your Honor?

22          **THE COURT:**  Yes.

23      **MR. LEONARD:**  That is just simply how you like to seat

24  the *venire* persons?  Do you question the entire *venire* or do

25  you cut it off at 30?

1          **THE COURT:**  Here's how it works.  So there will be a

2     row of chairs in front of the jury box.  And then I'll have

3     people come in already pre-mixed.  So juror number one will be

4     juror number one.  Exactly.  And they'll sit on the benches in

5     the same way.  So they'll all be sitting, you know, wherever we

6     get to back there.  26, 27, 28, 29, whatever it is.

7          And I will, depending on how many people come in, I'll ask

8     them all to stand up and introduce themselves.  You know, the

9     standard five or six questions.  And then I will probably

10    question -- I probably won't listen to answers from people from

11    40 on until we know how things are shaking out.  Unless it

12    looks like there are going to be a number of cause people.

13    That's my general practice which I sometimes follow.

14         But --

15         **MS. MOEEL:**  Okay.  So -- I'm sorry.  From where your

16    clerk is sitting, is that seat number one?

17         **THE COURT:**  Seat number one is actually in front of

18    Thanithia there.

19         Is that right, Jean?  Do we do one that way?

20         **THE CLERK:**  Yeah.

21         **THE COURT:**  So there will be like seven or eight in

22    front, and then where Thanithia is will be the next eight.

23         **MS. MOEEL:**  That's eight.  And then nine is over

24    there.  Then they'll start from that corner on?

25         **THE COURT:**  Exactly.

1      **MS. MOEEL:**  For our little cheat sheet that I create.

2  Great.

3      **THE COURT:**  Then I haven't -- well, I did once.  So

4  we'll go through the questions.  I'll finish the questions.

5  You will finish the questions.  Then we'll meet at sidebar and

6  discuss cause and hardship.  And I'll dismiss those folks.

7      I tend not -- almost every time I do not refill the box

8  because you know where people are sitting.  You know how

9  they've answered the questions where we were.  And I think it's

10  more confusing than helpful to move people around.  So that's

11  what I do.  And so you'll be then able to exercise your

12  peremptories passing the sheet back and forth.

13      **MS. MOEEL:**  Okay.  So we do it that way.

14      **THE COURT:**  Yeah.

15      **MS. MOEEL:**  Great.

16      **THE COURT:**  So that's generally how it should work.

17      **MR. LEONARD:**  That's helpful, Your Honor.  Thank you.

18      **THE COURT:**  So is there anything else that we ought to

19  talk about?

20      **MR. LEONARD:**  Jury instructions, Your Honor.  I think

21  we --

22      **THE COURT:**  Looked like you were in great shape on the

23  jury instructions.

24      **MR. LEONARD:**  And I think we agreed on all of them.

25  And to be more -- we were a little bit more cautious we put "if

1  applicable" by a number of them.  And we can address those I

2  think as we get closer to needing them.

3       THE COURT:  And everybody's -- we're all set with the

4  beginning ones, so I think we'll be fine.  And then we'll just

5  have to decide.

6       So given that we're playing on Southern District of

7  California rules, how long is the -- how long do you think it's

8  going to be to put in this case?

9            MR. LEONARD:  Well, we wish it could be shorter.

10           MS. MOEL:  The chemist is like 15 minutes.

11           MR. LEONARD:  I'll let -- Mr. Vieira is lead counsel.

12  He knows the case better than I do.

13       MR. VIEIRA:  I would say, Your Honor, doing a full day

14  on Monday -- and I would anticipate -- I haven't done jury

15  selection in this court, but I would anticipate we'd probably

16  be done early in the afternoon with that?

17       THE COURT:  Yes.  Typically it's -- we'll be able to

18  break for lunch and then start with opening statements.

19       MR. VIEIRA:  Okay.  Okay.  So jury instructions would

20  be done before even potentially lunch?  Initial jury

21  instructions?

22       THE COURT:  Or I'll instruct immediately after, but

23  they don't take very long.

24       MR. VIEIRA:  Okay.  So I would think, then, at that

25  point -- and we would go until 4 on that first day?  That we

```
 1   would probably get -- probably would not finish with the first
 2   witness, but that's going to be a longer witness.  I think
 3   we'll probably get through -- the government might rest on
 4   Wednesday.
 5            THE COURT:  All right.  And then maybe --
 6            MS. MOEEL:  Our case would be no more than -- well,
 7   depending on -- not including cross, I think it would be no
 8   more than four hours total.
 9            THE COURT:  All right.  Okay.  So we'll have -- we'll
10   figure out maybe on -- I'll look at my calendar.  But one of
11   the afternoons, Wednesday afternoon, maybe, we'll have an
12   instruction conference just to make sure that we've got
13   everything set.
14      Okay.
15            MR. VIEIRA:  Could we potentially set a date to
16   receive a witness list and exhibit list from the defense since
17   those have not been produced or provided yet.
18            THE COURT:  Well, so, I gave you March 23 for
19   documents that hadn't been produced.  Which I think goes both
20   ways.  So if you've got anything.
21            MS. MOEEL:  Including a witness list, Your Honor?
22            THE COURT:  Yeah, including a witness list.  We know
23   what this case is.  So I don't think there would be any
24   surprises.
25            MS. MOEEL:  Okay.
```

1          **THE COURT:**  All right.  Anything else?

2          **MS. MOEL:**  No, Your Honor.

3          **MR. VIEIRA:**  (Nod negatively.)

4          **THE COURT:**  Mr. Lopez, if you've been tracking all of

5     this you know sort of the shape of the case.

6          **THE DEFENDANT:**  Yes.

7          **THE COURT:**  Okay.  All right.  So I will see you on

8     the 2nd.  If there's a reason that we need to get together on

9     the 29th because of the other acts or the transcripts or

10    anything like that, let me know.  Otherwise, we'll deal with it

11    as it comes.

12         **MS. MOEL:**  Great.  Thank you, Your Honor.

13         **THE COURT:**  Thanks very much.

14         **MR. VIEIRA:**  Would the Court want a pre-trial

15    conference for the second trial now?

16         **THE COURT:**  I think we can talk about -- what are you

17    thinking of, Mr. Vieira.  What more would we want to go

18    through?

19         **MR. VIEIRA:**  I guess on that one there was just an

20    evidentiary issue with regard to some of the evidence in that

21    case that I was going to raise, but it's not necessarily

22    something that would need to be done now.  It was just going to

23    be the government's position that -- the government received

24    toll records for the telephone that was used to make the call

25    that made the threats.  And we were -- the government was just

 1   going to argue in the hopes of avoiding having to call a

 2   custodian of records that because those are computer-generated

 3   toll records that were not created by a person, they actually

 4   are non-hearsay and would be admissible as such.  And I

 5   actually have a Ninth Circuit case that, basically, says that

 6   not for toll records but says that for computer-generated

 7   information.

 8           **THE COURT:**  Okay.  Why don't you do like a one-page

 9   brief that says just what you said and cites the case.  And

10   then respond, as well, within a week from now.  Got plenty of

11   time.  Within a week of the time that it's filed.  Whenever it

12   gets filed.  And we can deal with that.

13           **MR. VIEIRA:**  Otherwise -- it's a very small cell phone

14   company so it's not as easy as calling up T-Mobile, for

15   instance.

16           **THE COURT:**  So actually since we're doing this, why

17   don't we say that on Friday, March 30, I'm going to reserve a

18   hearing time at 10:00.  And if either party wants to address

19   any trial-related issues they should just notify Ms. Davis.

20   And if I want to see you then I will notify you.

21           **MR. VIEIRA:**  Okay.

22           **MS. MOEEL:**  Great.  Thank you, Your Honor.

23           **MR. VIEIRA:**  Will the Court want additional new

24   witness/exhibit/jury instructions for the new --

25           **THE COURT:**  The only thing I care about is that you've

```
 1   shared with the defense what it is that you're doing.  But I
 2   don't need anything more than what I've got at the moment.
 3              MR. VIEIRA:  Okay.  Thank you.
 4              MS. MOEEL:  Thank you, Your Honor.
 5              THE COURT:  Great.  Thank you.  Thank you, Mr. Lopez.
 6                          ---oOo---
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF REPORTER**

     I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Tuesday, March 20, 2018




               //Vicki Eastvold
_____

           Vicki Eastvold, RMR, CRR
            U.S. Court Reporter